No. 19815—State ex rel C. C. Crabbe, Attorney General, v. The City of Cleveland. Error to the Court fo Appeals of Cuyahoga county.

323. CRIMINAL LAW—1. Held to be the intention of the legislature to segregate all fines imposed by Cleveland Municipal Court, 1574-41 GC., and to make Crabbe Act supersede all other acts on that subject.

2. Sec. 6212-19 GC., so far as it relates to collection and disposition of fines collected thereunder, and are repealed as to inconsistency with 6212-20 GC.

JONES, J.

1. Where it is evident that, by general law, the general assembly was engaged in specific legislation upon a particular subject, an earlier special act, legislating generally upon the same and other subjects, is superseded by the later legislation upon that particular subject. In this case construing both acts in pari materia, it was manifestly the legislative purpose, by its adoption of the later enactment of 1920, (Section 6212-19, General Code, 108 O. L. Pt. 2, 1184), to segregate all fines imposed for violation of criminal offenses under that act from the fines generally imposed and collected under the provisions of the Cleveland Municipal Court Act, (Section 1574-41, General Code) adopted in 1915. And to the extent that the provisions of such municipal act relate to the disposition of fines imposed and collected for violation of the "Crabbe Act", it is inconsistent with and is superseded by the later act specifically controlling that subject.

2. The provisions of such Municipal Court Act of 1915, being inconsistent with the provisions of the act of 1920 so far as they relate to the disposition of moneys arising from fines collected thereunder, are repealed "to the extent of such inconsistency" under the express provisions of such, later act. (Section 6212-20, General Code, 108. L., pt 2, 1184. Section 9).

Judgment reversed.

Marshall, CJ., Matthias, Day and Allen, JJ., concur. Robinson, J., not participating.

---

No. 20041—Emma Matzinger et al v. The Harvard Lumber Company. Error to the Court of Appeals of Cuyahoga county.

755. MECHANICS' LIENS—1. Requirements of 8312 GC. as to notice to owner, apply to contractor and subcontractor, but not to materialmen.

2. Whether materials furnished by a dealer to a contractor, were selected from stock of the dealer, or made by dealer in his own shop, or procured for the purpose from another dealer, he is a materialman, and not a subcontractor.

3. Provisions of 8323 GC., authorize payment of attorney fees, only out of the fund realized for lien claims found valid.

MATTHIAS, J.

1. The provisions of Section 8312, General Code, requiring notice to be served upon the owner of a structure being erected under contract, apply to the contractor and sub-contractor but not to material men.

2. Whether materials furnished by a dealer to a contractor to be used in the process of the erection of a building were selected from the stock of the dealer or made by him in his own establishment or procured from another dealer, having nothing to do relative to the installation of said materials or the fabrication thereof into the structure, is a material man and not a sub-contractor.

3. The provisions of Section 8323, General Code, authorize the payment of an attorney fee only out of the fund realized for lien claimants, which fund is the sum applicable to the payment of mechanics' lien claims found to be valid.

Jones, Day, Allen, Kinkade and Robinson, Judgment modified and affirmed.

JJ., concur. Marshall, CJ., concurs in propositions 1 and 2 of the syllabus and in the judgment.

---

(Continued from page 842)

Copies of both the Annual and the Quad, will be ready for delivery by the time this paper reaches subscribers, a service much ahead of any other digest of 1926 decisions of Ohio courts, and containing double the current case law elsewhere digested.

---

## BOUND VOLUMES OF ABSTRACTS

At the end of this year, four volumes of the Abstract will have been completed and the work has thus become of such enlarged use in the courts, that the demand for it has greatly increased, and not only this, but the use of it has become of such importance, that its possessors have had their pride increased, and they are unwilling to rely merely upon the temporary volumes they have been saving in the binders we furnish. They also want good looking volumes that will grace their library shelves.

So the demand for real law books, bound volumes, has sprung up, and it has become necessary for us to adopt a plan of furnishing, at a minimum expense, bound volumes to subscribers who desire them.

If the subscriber sends us $2.50 extra with his general Subscription for 1927, we furnish him a bound volume without his request, at the close of the year, and when he gets it, he must mail us his numbers. We thus substitute a bound volume for his used numbers at a low priced cost for binding.

Subscribers who want a bound volume of their 1925 or 1926 numbers, will be served in the same way, if, when they renew for 1927, they advance $2.50 for exchange of their numbers, to pay for a bound volume and postage.